## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## CHICAGO DIVISION

| | |
|---|---|
| JOE LUMPKINS, Individually and For Others Similarly Situated | Case No. 1:23-cv-1824 |
| v. | Jury Trial Demanded |
| ENTRUST SOLUTIONS GROUP, LLC f/k/a EN ENGINEERING, LLC | FLSA Collective Action Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.  Joe Lumpkins ("Lumpkins") brings this lawsuit to recover unpaid overtime wages and other damages from Entrust Solutions Group, LLC f/k/a EN Engineering, LLC ("EN") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*; and Washington wage and hour laws ("Washington Wage Laws"), RCW Ch. 49.46, *et seq.*

2.  Lumpkins and the Putative Class Members (as defined below) regularly worked more than 40 hours a week.

3.  But these employees never received overtime at a rate not less than 1.5 times their regular rates of pay for hours worked in excess of 40 hours in a workweek.

4.  Instead of paying overtime, EN uniformly misclassified Lumpkins and the Putative Class Members as exempt employees and paid them a minimum guaranteed "salary" plus extra compensation ("minimum guarantee plus extras pay plan").

5.  EN paid Lumpkins and the Putative Class Members a guaranteed base salary for their first 40 hours of work plus "straight time" pay for all hours worked in excess of 40 hours in a workweek.

6.      EN's minimum guarantee plus extras pay plan violates the FLSA, IMWL, and Washington Wage Laws because Lumpkins and the Putative Class Members are non-exempt employees entitled to overtime pay at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

7.      Lumpkins brings this class and collective action to recover unpaid overtime wages and other damages owed to him and the Putative Class Members.

## JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction over this action pursuant 28 U.S.C. § 1331 because this case involved a federal question under the FLSA, 29 U.S.C. § 216(b).

9.      The Court also has supplemental jurisdiction over the state law subclasses pursuant to 28 U.S.C. § 1367 because these claims arise from a common nucleus of operative facts.

10.      This Court has personal jurisdiction over EN because EN maintains its headquarters in Warrenville, Illinois, which is in this District and Division.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because EN maintains its headquarters in Warrenville, Illinois, which is in this District and Division.

## PARTIES

12.      Lumpkins worked for EN as an Inspector from approximately April 2019 until December 2022.

13.      Throughout his employment, EN paid Lumpkins under its minimum guarantee plus extras pay plan.

14.      Lumpkins's written consent is attached as **Exhibit 1**.

15.      Lumpkins brings this action on behalf of himself and all other similarly situated Inspectors who EN paid under its minimum guarantee plus extras pay plan.

- 2 -

16.     EN paid each of these Inspectors a guaranteed base salary for their first 40 hours of work plus "straight time" pay for all hours they worked in excess of 40 hours in a workweek in violation of the FLSA, IMWL, and Washington Wage Laws.

17.     The FLSA collective of similarly situated employees sought to be certified under 29 U.S.C.§ 216(b) is defined as:

> **All current and former Inspectors who worked for, or on behalf of, EN who were paid under EN's minimum guarantee plus extras pay plan at any time during the past 3 years ("FLSA Class Members" or "FLSA Class").**

18.     Lumpkins also seeks certification of such a class under Fed. R. Civ. P. 23 and the IMWL. The Illinois class of similarly situated employees is defined as:

> **All current and former Inspectors who worked for, or on behalf of, EN in Illinois who were paid under EN's minimum guarantee plus extras pay plan at any time during the past 3 years ("Illinois Class Members" or "Illinois Class").**

19.     Lumpkins also seeks certification of such a class under Fed. R. Civ. P. 23 and the Washington Wage Laws. The Washington class of similarly situated employees is defined as:

> **All current and former Inspectors who worked for, or on behalf of, EN in Washington who were paid under EN's minimum guarantee plus extras pay plan at any time during the past 3 years ("Washington Class Members" or "Washington Class").**

20.     The FLSA Class Members, Illinois Class Members, and Washington Class Members are collectively referred to as the "Putative Class Members."

21.     The Putative Class Members are easily ascertainable from EN's business and personnel records.

22.     EN is a Delaware limited liability company that maintains its headquarters in Warrenville, Illinois.

23.     EN may be served through its registered agent: **Cogency Global, Inc., 600 South Second Street, Suite 404, Springfield, Illinois 62704**.

## COVERAGE UNDER THE FLSA

24. At all relevant times, EN was an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, EN was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, EN was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment – that have been moved in or produced for commerce.

27. At all relevant times, EN has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28. At all relevant times, Lumpkins and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

29. EN uniformly applied its policy of paying its Inspectors, including Lumpkins and the Putative Class Members, a guaranteed base salary for their first 40 hours of work plus "straight time" pay for all hours worked in excess of 40 hours in a workweek.

30. EN applied this policy regardless of any alleged individualized factors such as specific job title, inspector type, client assignment, or geographic location.

31. By paying its Inspectors under its minimum guarantee plus extras pay plan, EN violated (and continues to violate) the FLSA's requirement that it pay employees overtime compensation at 1.5 times their regular rates for hours worked in excess of 40 in a workweek.

32. As a result of EN's uniform minimum guarantee plus extras pay plan, Lumpkins and the Putative Class Members do not receive overtime as required by the FLSA.

- 4 -

33.     EN's uniform compensation scheme of paying its Inspectors a guaranteed base salary for their first 40 hours of work plus "straight time" pay for all hours worked in excess of 40 hours in a workweek is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

34.     EN bills itself as "one of the fastest-growing engineering firms in the country" that restore[s] and expand[s] infrastructures, enhance[s] and streamline[s] systems, and identif[ies] and record[s] key assets for clients, including gas and electric utilities, telecommunication service providers, pipeline operators, and industrial companies."[1]

35.     In July 2022, EN Engineering rebranded to ENTRUST Solutions Group.[2]

36.     To complete its business objectives, EN hires Inspectors (including Lumpkins and the Putative Class Members) to perform pipeline inspection services to its clients across the country, including in Illinois and Washington.

37.     As Inspectors, Lumpkins and the Putative Class Members primary duties include inspecting, observing, and testing the workmanship and materials for compliance with EN's clients' policies, procedures, plans, and specifications, as well as all applicable codes and regulations.

38.     Thus, Lumpkins and the Putative Class Members are performing non-exempt job duties and, therefore, are entitled to overtime pay at a rate not less than 1.5 times their regular rates of pay.

39.     But EN uniformly pays its Inspectors (including Lumpkins and the Putative Class Members) a guaranteed base salary for their first 40 hours of work plus "straight time" pay for all hours worked in excess of 40 hours in a workweek (or "a minimum guarantee plus extras").

---

[1] https://entrustsol.com/about/ (last visited March 22, 2023).
[2] https://entrustsol.com/en-engineering-rebrands-to-entrust-solutions-group-paving-way-for-growth-expansion-and-diversification/(last visited March 22, 2023).

40. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

41. For example, Lumpkins worked for EN as a Utility Inspector in Illinois and Washington from approximately April 2019 until December 2022.

42. Throughout his employment, EN paid Lumpkins under its minimum guarantee plus extras pay plan.

43. Specifically, EN paid Lumpkins a guaranteed base salary for his first 40 hours of work plus "straight time" pay (at $40-45/hour) for all hours he worked in excess of 40 hours in a workweek.

44. EN paid Lumpkins and the Putative Class Members under its minimum guarantee plus extras pay plan that deprives these employees of overtime at the proper premium rate when they work in excess of 40 hours in a workweek in violation of the FLSA, IMWL, and Washington Wage Laws.

45. This is despite Lumpkins and the Putative Class Members regularly working 60+ hours each workweek.

46. In fact, EN typically scheduled Lumpkins and the Putative Class Members to work 10+ hours a day, for 5-6 days a week, for weeks at a time.

47. Instead of paying overtime at the proper premium rate, EN paid Lumpkins and the Putative Class Members "straight time" pay for all hours they worked in excess of 40 hours in a workweek.

48. But Lumpkins and the Putative Class Members are non-exempt employees entitled to overtime at the proper premium rate.

49. Lumpkins and the Putative Class Members worked in accordance with the schedule set by EN and/or its clients.

50. The hours Lumpkins and the Putative Class Members worked are reflected in EN's records.

51.　　Likewise, EN controls all the significant or meaningful aspects of the job duties and inspection work Lumpkins and the Putative Class Members perform.

52.　　As Inspectors, Lumpkins and the Putative Class Members review construction documents, specifications, plans, policies, and procedures and apply well-defined, known industry and regulatory standards.

53.　　EN requires Lumpkins and the Putative Class Members to follow EN's and/or its clients' policies and procedures.

54.　　Lumpkins and the Putative Class Members' work must adhere to the quality standards put in place by EN and/or its clients.

55.　　Lumpkins and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other inspectors in their respective positions) to perform their job duties.

56.　　Indeed, the daily and weekly activities of Lumpkins and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by EN and/or its clients.

57.　　Virtually every job function is predetermined by EN (or its clients), including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

58.　　EN prohibits Lumpkins and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Lumpkins and the Putative Class Members to follow EN's (or its clients') policies, procedures, and directives.

59.　　EN exercises control over the hours and locations Lumpkins and the Putative Class Members work, the tools and equipment they use, the reports they provide, and the rates of pay they receive.

60.    All of EN's Putative Class Members perform similar inspection job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

61.    Lumpkins and the Putative Class Members do not have the power to hire, fire, or discipline any employees.

62.    Lumpkins and the Putative Class Members do not supervise other EN employees.

63.    Clearly, Lumpkins and the Putative Class Members performed non-exempt work.

64.    But EN uniformly classified Lumpkins and the Putative Class Members as exempt employees to avoid paying them overtime.

65.    Lumpkins's working relationship with EN is similar to that of the Putative Class Members.

66.    Lumpkins and the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice (EN's minimum guarantee plus extras pay plan).

67.    Lumpkins and the Putative Class Members work in excess of 40 hours each week and often work 60+ hours in a workweek.

68.    EN uniformly denies Lumpkins and the Putative Class Members overtime pay at the proper premium rate for the hours they work in excess of 40 hours in a workweek.

69.    Rather than receiving time and half as required by the FLSA, IMWL, and Washington Wage Laws, EN only paid Lumpkins and the Putative Class Members "straight time" pay for the hours they worked over 40 in a workweek.

70.    EN's minimum guarantee plus extras pay plan violates the FLSA, IMWL, and Washington Wage Laws because it deprives Lumpkins and the Putative Class Members of overtime at a rate of 1.5 time their regular rates for the hours they work in excess of 40 hours in a workweek.

71.     EN is aware, or should have been aware, that the FLSA, IMWL, and Washington Wage Laws required it to pay Lumpkins and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

72.     EN knew Lumpkins and the Putative Class Members regularly worked more than 40 hours a week.

73.     EN knew, or showed reckless disregard for whether, the Putative Class Members were non-exempt employees entitled to overtime under the FLSA, IMWL, and Washington Wage Laws.

74.     In fact, EN has been sued before for paying employees, including its Inspectors, under its minimum guarantee plus extras pay plan in violation of the FLSA and analogous state wage and hour laws. *See Rossman v. EN Eng'ing, LLC*, No. 1:19-CV-5769 (N.D. Ill.); *McConnell v. EN Eng'ing, LLC*, No. 1:10-CV-0153 (W.D. Pa.).

75.     Nonetheless, EN did not pay Lumpkins or the Putative Class Members overtime at the premium rates required by the FLSA, IMWL, and Washington Wage Laws.

76.     EN knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA, IMWL, and Washington Wage Laws.

77.     EN's failure to pay Lumpkins and the Putative Class Members overtime compensation at the proper premium rates was neither reasonable, nor was EN's decision not to pay these employees overtime at the proper premium rates made in good faith.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

78.     Lumpkins incorporates all other paragraphs and allegations by reference.

79.     Lumpkins brings his claims as a class and collective action under the FLSA, the IMWL, and the Washington Wage Laws.

80.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA, the IMWL, and the Washington Wage Laws.

81.    Numerous other individuals, like Lumpkins, indicated they were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA, the IMWL, and the Washington Wage Laws.

82.    Based on his experiences and tenure with EN, Lumpkins is aware that EN's illegal practices were likewise imposed on the Putative Class Members.

83.    The Putative Class Members were all paid under EN's minimum guarantee plus extras pay plan and not afforded the overtime compensation at the proper premium rate when they worked in excess of 40 hours per week.

84.    EN's failure to pay wages and overtime compensation at the rates required by the FLSA, the IMWL, and the Washington Wage Laws results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

85.    The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

86.    Lumpkins has no interest contrary to, or in conflict with, the Putative Class Members.

87.    Like each Putative Class Member, Lumpkins has an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

88.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

89.    Absent this class and collective action, many Putative Class Members likely will not obtain redress of their injuries, and EN will reap the unjust benefits of violating the FLSA and applicable state labor laws.

90.    Further, even if some of the Putative Class Members could afford individual litigation against EN, it would be unduly burdensome to the judicial system.

91.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

92.     The questions of law and fact that are common to each member of the FLSA, Illinois, and Washington Classes predominate over any questions affecting solely the individual members.

93.     Among the common questions of law and fact are:

a.     Whether EN uniformly and systemically paid Lumpkins and the Putative Class Members under its minimum guarantee plus extras pay plan;

b.     Whether Lumpkins and the Putative Class Members were exempt from overtime;

c.     Whether EN's violations of the FLSA, the IMWL, and the Washington Wage Laws resulted from a continuing course of conduct;

d.     Whether EN's decision to pay Lumpkins and the Putative Class Members under its minimum guarantee plus extras pay plan was made in good faith; and

e.     Whether EN's violations of the FLSA, the IMWL, and the Washington Wage Laws were willful.

94.     Lumpkins and the Putative Class Members sustained damages arising out of EN's illegal and uniform pay policy.

95.     Lumpkins knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

96.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to EN's records, and there is no detraction from the common nucleus of liability facts.

97.     Therefore, the issue of damages does not preclude collective or class treatment.

98.     EN is liable under the FLSA, the IMWL, and the Washington Wage Laws for failing to pay overtime at the proper premium rates to Lumpkins and the Putative Class Members.

99.    Consistent with EN's illegal pay policy, Lumpkins and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

100.    As part of their regular business practices, EN intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, the IMWL, and the Washington Wage Laws with respect to Lumpkins and the Putative Class Members.

101.    EN's illegal pay policy deprived Lumpkins and the Putative Class Members of the premium overtime wages they are owed under federal and state law.

102.    EN is aware, or should have been aware, that the FLSA, the IMWL, and the Washington Wage Laws required it to pay Lumpkins and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

103.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA, the IMWL, and the Washington Wage Laws who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

104.    Notice of this lawsuit should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

105.    Those similarly situated workers are known to EN, are readily identifiable, and can be located through EN's business and personnel records.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FLSA
### (FLSA CLASS)

106.    Lumpkins realleges and incorporates all other paragraphs and allegations by reference.

107.    Lumpkins brings this claim as a collective action under the § 216(b) of the FLSA.

108.    As set forth herein, EN has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for

commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

109.    EN knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Lumpkins and the FLSA Class Members overtime compensation at the proper premium rate.

110.    EN's failure to pay overtime compensation to Lumpkins and the FLSA Class Members at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime at the proper premium rate made in good faith.

111.    Accordingly, Lumpkins and the FLSA Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE IMWL**
**(ILLINOIS CLASS ONLY)**

112.    Lumpkins realleges and incorporates all other paragraphs and allegations by reference.

113.    Lumpkins brings his claim under the IMWL as a Rule 23 class action.

114.    The conduct alleged violates the IMWL (820 ILCS 105/1 *et seq*.).

115.    EN violated, and is violating, the IMWL by failing to pay Lumpkins and the Illinois Class Members overtime at the proper premium rate for all hours worked in excess of 40 in a workweek.

116.    At all relevant times, EN was subject to the requirements of the IMWL.

117.    At all relevant times, EN employed Lumpkins and the Illinois Class Members as "employees" within the meaning of the IMWL.

118.    The IMWL requires employers like EN to pay employees at a rate not less than 1.5 times the regular rate of pay for hours worked in excess of 40 hours in any one week.

119.    Lumpkins and the Illinois Class Members are entitled to overtime pay under the IMWL.

120.    EN's minimum guarantee plus extras pay plan violates the IMWL because it deprives Lumpkins and the Illinois Class Members of overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek. *See* 820 ILCS 105/12.

121.    Accordingly, Lumpkins and the Illinois Class Members are entitled to recover their unpaid overtime compensation, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE WASHINGTON WAGE LAWS**
**(WASHINGTON CLASS ONLY)**

122.    Lumpkins realleges and incorporates all other allegations and paragraphs by reference.

123.    Lumpkins brings his claim under the Washington Wage Laws as a Rule 23 class action.

124.    The conduct alleged violates the Washington Wage Laws (RCW 49.46.130).

125.    EN violated, and is violating, the Washington Wage Laws by failing to pay Lumpkins and the Washington Class Members overtime at the proper premium rate for all hours worked in excess of 40 in a workweek.

126.    At all relevant times, EN was subject to the requirements of the Washington Wage Laws.

127.    At all relevant times, EN employed Lumpkins and the Washington Class Members as "employees" within the meaning of the Washington Wage Laws.

128.    The Washington Wage Laws require EN to pay non-exempt employees, including Lumpkins and the Washington Class Members, at a rate of not less than 1.5 times their regular hourly rate for all hours worked in excess of 40 hours per week. *See* RCW 49.46.130(1).

129.    EN violated, and continues to violate, the Washington Wage Laws when it fails to pay Lumpkins and the Washington Class Members overtime wages at a rate of not less than 1.5 times their regular hourly rate for hours worked in excess of 40 hours a week.

130.    Accordingly, Lumpkins and the Washington Class Members are entitled to recover their unpaid overtime wages (RCW 49.46.090), an equal amount as liquidated damages (RCW 49.52.070), attorney's fees and costs (RCW 49.48.030), as well as pre- and post-judgment interest at a rate of 12% per annum (RCW 19.52.020).

**JURY DEMAND**

131.    Lumpkins demands a trial by jury.

**PRAYER**

WHEREFORE, Lumpkins, individually, and on behalf of the Putative Class Members, respectfully requests that this Court grant the following relief:

      a.   An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the FLSA Class Members to permit them to join this action by filing a written notice of consent;

      b.   An Order designating the Illinois Class as a class action pursuant to FED. R. CIV. P. 23;

      c.   An Order designating the Washington Class as a class action pursuant to FED. R. CIV. P. 23;

      d.   An Order appointing Lumpkins and his counsel to represent the interests of the federal collective and the Illinois and Washington Classes;

      e.   An Order finding EN liable to Lumpkins and the FLSA Class for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

      f.   An Order finding EN liable to Lumpkins and the Illinois Class for unpaid overtime owed under the IMWL, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

- 15 -

g.  An Order finding EN liable to Lumpkins and the Washington Class for unpaid overtime owed under the Washington Wage Laws, liquidated damages, as well as interest at the highest available rates allowed by law;

h.  A Judgment against EN awarding Lumpkins and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

i.  An Order awarding attorney's fees, costs, and expenses;

j.  Pre- and post-judgment interest at the highest applicable rates; and

k.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Douglas M. Werman*

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS PC**
77 W. Washington St., Suite 1402
Chicago, IL 60602
312-419-1008 – Telephone
dwerman@flsalaw.com
msalas@flsalaw.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

Richard J. (Rex) Burch*
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**